[Civil No. 2259.   Filed April 18, 1925.]

[235 Pac. 137.]

SCOTTISH UNION AND NATIONAL INSURANCE COMPANY, a Corporation, Appellant, v. PHOENIX TITLE AND TRUST COMPANY, Trustee, Appellee.

1. STATUTES—REMAINDER OF ACT VALID, IF UNCONSTITUTIONAL PROVISION CAN BE ELIMINATED WITHOUT INJURY TO REMAINDER.— If an unconstitutional provision of a statute can be eliminated, leaving a complete statute, whose meaning and effect is not repugnant to original law, remainder of act will stand.

---

1. Effect of partial invalidity of statutes relating to insurance, see note in **Ann. Cas.** 1916D, 61. See, also, 6 **R. C. L.** 126.

2. STATUTES—REMAINDER OF STATUTE RELATING TO ADOPTION OF "NEW YORK STANDARD" FORM OF FIRE INSURANCE POLICY, AFTER ELIMINATION OF UNCONSTITUTIONAL PROVISION, IS VALID.—Civil Code of 1913, paragraph 3440, adopting the "New York standard" form of fire insurance policy, is unconstitutional as to provision "as now or may hereafter be constituted"; but, as such unconstitutional provision may be eliminated without injury to remainder, such remainder is not void.

3. EVIDENCE—JUDICIAL NOTICE TAKEN OF INSURANCE POLICY KNOWN AS "NEW YORK STANDARD."—Courts will take judicial notice that there is in existence a form of insurance policy known as the "New York standard," and just what that form is.

4. STATUTES—STATUTE ADOPTING "NEW YORK STANDARD" FORM OF FIRE INSURANCE POLICY BY REFERENCE VALID.—In view of fact that court will judicially notice that a form of insurance policy known as "New York standard" is in existence, Civil Code of 1913, paragraph 3440, adopting the "New York standard" form of fire insurance policy, omitting the words "as now or may hereafter be constituted," is not void because of uncertainty, or because it adopts New York standard merely by reference.

5. INSURANCE—WHAT WAS INCLUDED IN "NEW YORK STANDARD" FIRE INSURANCE POLICY, WHEN ADOPTED BY STATE STATUTE, STATED.—Under Civil Code of 1913, paragraph 3440, adopting "New York standard" form of fire insurance policy, the form of mortgagee rider which was filed pursuant to New York statute of 1901 is the form which became part of "New York standard" adopted by paragraph 3440, and any rider attached to policy contrary thereto is invalid.

6. INSURANCE—POLICY CONTAINING ILLEGAL CLAUSE WILL BE ENFORCED WITH SUCH CLAUSE STRICKEN.—Since "New York standard" form of fire insurance policies were adopted by Civil Code of 1913, paragraph 3440, for express purpose of preventing insured from being deceived or overreached by insurer, where insurer attaches a rider to a policy which is contrary to "New York standard" form, the policy will be enforced as it stands, with forbidden clause stricken.

See (1) 36 **Cyc.**, p. 976. (2) 36 **Cyc.**, p. 976. (3) 23 **C. J.**, p. 131 (1926 Anno.). (4) 36 **Cyc.**, pp. 969, 970 (1926 Anno.). (5) 26 **C. J.**, p. 57. (6) 26 **C. J.**, p. 57.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Messrs. Armstrong, Lewis & Kramer, for Appellant.

Messrs. Kibbey, Bennett, Gust & Smith, for Appellee.

LOCKWOOD, J.—In August, 1917, Samuel E. Staggs and wife executed and delivered to Phoenix Title & Trust Company, hereinafter called plaintiff, their note for $1,500, secured by a mortgage on certain real estate, in which mortgage they agreed to keep the dwelling-house on the land insured against fire, for the benefit of plaintiff, in the sum of $1,200. On March 8, 1918, Staggs secured from Scottish Union & National Insurance Company, a corporation, hereinafter called defendant, an insurance policy in his favor, on said dwelling-house, for $600, which carried a certain mortgagee rider in favor of plaintiff. Thereafter the title passed through various mesne conveyances to one George L. Billingsley, and the latter, on April 27, 1920, without the knowledge· or consent of defendant, secured an insurance policy of $3,000 from the Farmers' & Ranchers' Mutual Fire Insurance Company, a corporation, on said house, payable only to Billingsley.

December 22, 1920, the dwelling-house was destroyed by fire. The loss, as adjusted, amounted to $1,200. Plaintiff demanded payment by defendant of the $600 face of the policy, and the latter offered to pay only $200, contending that, by the terms of the policy and the mortgagee rider, its insurance was limited to that proportion of the total loss which its policy bore to the total amount of the insurance, or one-sixth of said loss. Suit was filed by plaintiff against defendant, and the former recovered judgment for the full $600, plus interest, penalty and attorney's fees, being a total of $980.90. The usual

motion for a new trial was made and denied, and from the order denying, and the judgment defendant appeals.

The entire appeal hinges on the interpretation of certain parts of the so-called mortgagee rider, as construed in the light of paragraph 3440, Revised Statutes of Arizona of 1913. We quote the rider and said paragraph, so far as material in this case:

"Loss or damage, if any, under this policy on buildings only, shall be payable to Phoenix Title & Trust Company, trustee, mortgagee (or trustee), as interest may appear. Subject to all the terms and conditions hereinafter set forth in this rider, this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property. . . .

"*Condition Four.*—In case of any other insurance upon the within described property, this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee, or otherwise."

3440: "No fire insurance company shall issue any fire insurance policy covering any property or interest therein in this state other than on the form known as the 'New York standard' as now or may hereafter be constituted. . . . "

It is the contention of plaintiff that its right as mortgagee to recover the full face of the policy from defendant cannot be affected by any acts of the original insured, or his successors in interest, and that the rider as aforesaid does not change such rule, by reason of the provisions of paragraph 3440, *supra*. Defendant, while conceding that, in the absence of the following words in the rider: "Subject to all the terms and conditions hereinafter set forth

in this rider''—plaintiff's contention would be true, under the rule laid down by this court in *Germania Fire Ins. Co.* v. *Bally,* 19 Ariz. 580, 1 A. L. R. 488, 173 Pac. 1052, claims that the insertion of these words is permissible under the law, and that their effect is to relieve it of the obligation of paying to plaintiff any more than a *pro rata* amount of the face of the policy, which would be, under the undisputed facts, only $200.

Plaintiff's position is based on the theory that under paragraph 3440, *supra,* all fire insurance policies in Arizona must conform to what is known as the ''New York standard'' policy, including any riders thereon, and that any limitations or burdens not contained in such standard policy and approved riders are to be considered as surplusage, and void at the option of the insured, and that the provision of the rider, subjecting the mortgagee to the *pro rata* clause, is not in conformity with the New York form, and is therefore void in that respect, but that the policy is otherwise in full force and effect.

Defendant's claim, that the provision in the rider above quoted is valid, is based on the following propositions:

(1) Section 3440, *supra,* is void (a) because it delegates to the New York legislature the power to make future policies binding on Arizona; and (b) because, even if the words ''as now or may here-after be constituted'' can be stricken without rendering the whole section invalid, the balance is void for uncertainty, since it does not set up either in substance or in form what is meant by the ''New York standard,'' and the same cannot be adopted by mere reference.

(2) If paragraph 3440, or any part thereof, is constitutional, it does not apply to riders such as the one in question.

(3) If it does apply to riders, plaintiff must either take the contract as written or not at all, since the Arizona law does not provide for the substitution of any different policy in the place of that made by the parties, even though it may be an illegal one.

Counsel for plaintiff concedes, and we think correctly, that the portion of paragraph 3440 adopting future changes to be made in the "New York standard" policy is unconstitutional, but does this necessarily invalidate the remainder of the paragraph? It is elementary that, if an unconstitutional provision can be eliminated, leaving a complete statute whose meaning and effect is not repugnant to the original law, the remainder of the act will stand. 36 Cyc. 976. It is plain this may be done with the paragraph in question, and the remainder thereof is not void merely because the words "as now or may hereafter be constituted" must be stricken.

But is that remainder void for uncertainty? There is nothing in the statute itself to show what the "New York standard" form is. Evidently the legislature assumed it was something so well known that the courts take judicial notice thereof, just as they do of the common law, the Declaration of Independence, the American Mortality Tables, or the Emancipation Proclamation. The list of things covered by judicial notice is constantly expanding, and no exact limit can be placed thereon. In view of the fact that in 1886 the state of New York by statute adopted a certain form of insurance policy as the "standard fire insurance policy of New York"; that such form has been adopted by many other states, and often by express reference to the "New York standard" form; and that every legal text-writer on insurance refers to it as a well known and definite thing—we think the courts can well take judicial notice that there is in existence a form of insurance

policy known as the "New York standard" and just what that form is.

But, even so, may the legislature, by mere reference to something of which our courts take judicial notice, adopt that something as the approved law of our state, without setting it up either in substance or *verbatim* in the statutes? That this may be done where the reference is to one of our own statutes is undoubted. *Clements* v. *Hall*, 23 Ariz. 2, 9, 201 Pac. 87. Counsel for defendant claims, however, that this cannot be done by reference to something not contained in our own laws, and cites *Carroll* v. *Hartford Fire Ins. Co.*, 28 Idaho, 466, 154 Pac. 988; *Anderson* v. *Manchester Fire Ins. Co.*, 59 Minn. 182, 50 Am. St. Rep. 400, 28 L. R. A. 609, 60 N. W. 1095, 63 N. W. 241; *Phoenix Ins. Co.* v. *Perkins*, 19 S. D. 59, 101 N. W. 1110; *Nalley* v. *Home Ins. Co.*, 250 Mo. 452, Ann. Cas. 1915A, 283, 157 S. W. 769; *O'Neil* v. *American Fire Ins. Co.*, 166 Pa. 72, 45 Am. St. Rep. 650, 26 L. R. A. 715, 30 Atl. 943.

The last four cases cited are not in point, as they were all decided on an attempt by the legislature to delegate to some state official the right to designate the form of policy to be used, although in most cases impliedly, and in the O'Neil and Nalley cases expressly, the right of the legislature to prescribe a standard form of policy is recognized. The Carroll case, however, is unquestionably in point, and on a statute very similar to ours. The court, however, in rendering its decision, gave the following reasons:

"Section 18 of article 3 of our Constitution prohibits the amendment of existing laws of this state by reference to their title, and commands that such sections as are amended be set forth at length in the new statute, and in view of this constitutional provision it would seem somewhat anomalous if the legislature could nevertheless adopt the law of another state by reference, not to its title even, but to

something still more indefinite, namely, 'the New York standard, as now or may be hereafter constituted.' "

While the Idaho Supreme Court does not expressly so hold, yet its line of reasoning necessarily would reach an opposite conclusion from that adopted by us in the Clements case as to the adoption by reference of another statute of our own state. The only difference we can see between the adoption of a foreign and local statute by reference in another law is that it may be argued the courts take judicial notice of the latter and not of the former, but since, as we have before stated, we take judicial notice of what the "New York standard" is, we feel the following quotation from the Supreme Court of Georgia in *Central of Georgia R. R. Co.* v. *State,* 104 Ga. 831, 42 L. R. A. 518, 31 S. E. 531, is more in harmony with the spirit of our decisions:

"If this contention be correct, then a large body of our laws, many of which have been enforced for a century, are unconstitutional and void. . . . The act of 1784, adopted the common law of England. . . . The Code of 1863 . . . went further than the original adopting act of 1784, and made parts of the civil and canon law of force in this state. By virtue of section 3945 of the present Code, 'equity jurisprudence embraces the same matters of judisdiction and modes of remedy in Georgia as was allowed and practiced in England.' This was simply an adoption of such jurisdiction and modes by mere reference. The New York percentage table for calculating reinsurance, the American experience or actuaries' table of mortality, and Stern's Calendar are thus adopted by acts codified in sections 2045, 2049, and 5169 of the Civil Code. . . . It is needless to multiply illustrations. The position is untenable and impracticable."

In our own state, paragraph 5555, Revised Statutes of Arizona of 1913, refers to a thing more indefinite and uncertain even than the "New York stand-

ard'' insurance policy. Yet, although the ''common
law'' therein adopted as part of our law was set
forth only by reference, it will hardly be contended
the statute is unconstitutional. Paragraph 3440,
*supra,* omitting the words ''as now or may hereafter
be constituted,'' is not void, either because of un-
certainty, or because it adopts the ''New York
standard'' merely by reference.

The question then arises as· to what was included
in the ''New York standard'' policy when our legis-
lature adopted it in 1913. There can be no doubt,
from the wording of paragraph 3440, that the legis-
lature intended to follow the rules adopted by the
state of New York in all respects, so far as the form
of policy was concerned. The whole history of fire
insurance legislation shows a ceaseless struggle on
the part of the companies to limit their liability, as
expressed on the face of the policy, and as generally
understood by the insured, through the use of chang-
ing conditions on the back of the policy, and in so-
called ''riders'' attached thereto, frequently phrased
in language whose legal meaning is unintelligible to
even the well-educated man, and an equally deter-
mined effort by the different legislatures to hold
all contracts of fire insurance to fixed forms, so that,
when their legal effect was once established, the in-
sured could rely upon there being no new so-called
''jokers'' introduced into his policy, whether by
rider or otherwise. The state of New York having,
for obvious reasons, had more experience with fire
insurance, and worked out a more complete scheme
of remedial legislation than any other commonwealth,
it was but natural many of the younger and smaller
states, and among them Arizona, should have relied
on its legislation as a trustworthy guide for them.

The first standard policy was adopted in New York
in 1886, and apparently the ingenuity of the com-

panies was such that it was found necessary to impose new limitations on them in 1892, and periodically thereafter. It is the contention of defendant that it was not until 1917, if indeed then, that New York succeeded in discovering a method of limiting the use of such riders as the one herein, while plaintiff insists that purpose was accomplished in 1901. It must be conceded that the New York act of 1917 shows plainly the legislature realized there was still a weakness in the law in regard to riders, which was being taken advantage of by the companies; but it seems to us the clause in controversy in this case is covered by the statute of 1901. That act provided that:

"The printed blank form of contract, . . . together with such provisions, agreements and conditions as may previous to the 31st day of December, 1901, be filed, . . . shall be known and designated as the standard fire insurance policy of the state of New York."

In compliance therewith there was filed a form of rider identical with that construed in the Bally case as a "mortgagee clause with full contribution." In our opinion such form became a part of the "New York standard policy" adopted by our legislature in 1913, and its legal effect could not be changed by any altered form of rider. Such legal effect, so far as is pertinent to the present action, was determined in the Bally case. Therefore it was not permissible for the defendant to insert a clause which, in effect, provided that the taking out of increased insurance by the owner of the premises should alter the rights of the mortgagee to recover on the policy.

But it is argued, admitting it was illegal to use the rider, yet the parties did so, and the court will not make a new contract for them, differing from the one they adopted. Either it must be enforced

as written, or it is wholly inoperative. The case of *Hewins et al.* v. *London Assur. Corp.*, 184 Mass. 177, 68 N. E. 62, fully sustains the position of defendant. We feel, however, that the case cited does not properly consider the purpose of the insurance codes. They were adopted for the express purpose of preventing the insured from being deceived or overreached by the insurer, and not to protect the peace and dignity of the state against the making of a contract contrary to its general public policy. Were it to be held that the effect of a condition contrary to the statute was to compel the insured to accept the condition or waive the policy, the insurer would have accomplished exactly what the law forbids, viz., limited his liability in a manner prohibited by law. In our opinion, the true rule is that the policy is enforceable as it stands, with the forbidden clause struck out. *Fidelity Phoenix Fire Ins. Co.* v. *School District et al.*, 70 Okl. 300, 174 Pac. 513; *Heim* v. *American Alliance Ins. Co.*, 147 Minn. 283, 180 N. W. 225, 1022.

For the foregoing reasons, the judgment appealed from is affirmed.

McALISTER, C. J., and ROSS, J., concur.