[Crim. No. 4387. Fourth Dist., Div. Two. July 27, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
THELMA CLAY, Defendant and Appellant.

## COUNSEL

Bruce D. MacLachlan, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and John R. Evans, Deputy Attorney General, for Plaintiff and Respondent.

Joseph P. Busch, Jr., District Attorney (Los Angeles County), Harry Wood and Harry B. Sondheim, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**GARDNER, P. J.**—The defendant was charged with the murder of her illegitimate grandson. Within two hours of the birth of the child, she placed the child in a towel in a paper sack. She then put the child in a trash container, poured lighter fluid over him, and ignited the lighter fluid. There is no trash pick-up where defendant lived; trash is disposed of by burning. She presented evidence that she believed the child was dead before she placed him in the trash and further evidence that she [the defendant] had a mental defect and was of limited intelligence.[1]

The jury found her guilty of second degree murder. The trial court reduced the offense to "non-statutory" voluntary manslaughter and sent her to prison. She was returned to court under the provisions of Penal Code, section 1168, with a recommendation from the prison authorities that she be placed on probation. The probation officer's supplemental report also recommended probation. She had no previous history of delinquent behavior.

The district attorney opposed the granting of probation. The court was of the opinion that under these circumstances probation was prohibited by the provisions of Penal Code section 1203. It properly found that the case came within the fifth unnumbered paragraph of that section in which probation is prohibited to one who in the perpetration of the crime of which she is convicted willfully inflicts great bodily injury.[2] (See *People* v. *Villegas*, 14 Cal.App.3d 700, 704 [92 Cal.Rptr. 663].) In referring to the

---

[1]This defense evidence is described in appellant's brief. It does not appear in the limited record before us, nor is it contradicted by that record.

[2]The unnumbered fifth paragraph of Penal Code, section 1203, provides, in pertinent part, as follows: "Except as hereinafter provided in this section, probation shall not be granted to . . . one who in the perpetration of the crime of which he was convicted willfully inflicted great bodily injury or torture. . . ."

sixth unnumbered paragraph of section 1203,[3] which allows the court to grant probation with the concurrence of the district attorney in cases in which a grant of probation would otherwise be forbidden by the fifth unnumbered paragraph, the court did not in explicit terms say, "I find this case to be an unusual one in which the interest of justice would be served by granting probation," but did say, ". . . I think this is a case where probation could be granted. . . ," and further that, ". . . were it not for the fact that the law exists as it does, I would forthwith grant probation. . . ." But, "in light" of the position of the district attorney, the court felt "compelled" to deny probation. Thus, while an affirmative finding of the judge that the case is unusual is necessary to bring the sixth paragraph into play (*People* v. *Brown,* 260 Cal.App.2d 434, 439 [67 Cal.Rptr. 238]; *People* v. *Cox,* 259 Cal.App.2d 653, 658 [66 Cal.Rptr. 576]), the Attorney General concedes that the court made an implied finding that the case came within the sixth paragraph of Penal Code section 1203, and that denial of probation was due to refusal of the district attorney to so agree.

Therefore, this court is faced squarely with the issue of whether vesting such a power in the district attorney is unconstitutional under the rationale of *People* v. *Tenorio,* 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993]; *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119 [95 Cal.Rptr. 524, 485 P.2d 1140]. This "very fundamental issue" which was prematurely raised in *People* v. *Villegas, supra,* 14 Cal.App.3d 700, and therefore not decided, must be decided here.

In *Tenorio,* the Supreme Court found the portion of Health and Safety Code section 11718, which specified that no allegation of fact which, if admitted or found true, would change the penalty for a narcotics offense could be dismissed by the court or stricken from the pleadings except on motion of the district attorney was unconstitutional as a violation of the doctrine of separation of powers. (Article III of the California Constitution.) The court held a prosecutor, as an advocate, could not be given authority to prevent the exercise of the judicial power to dismiss the allegation of a prior conviction.

In *Esteybar,* the Supreme Court held unconstitutional on the same grounds Penal Code section 17, subdivision (b)(5), insofar as it requires the consent of the prosecutor before a magistrate may exercise his discretion to determine that a charged offense should be tried as a misdemeanor instead of a felony.

---

[3]The unnumbered sixth paragraph of Penal Code section 1203, provides: "In unusual cases, otherwise subject to the preceding paragraph, in which the interests of justice would best be served thereby, the judge may, with the concurrence of the district attorney, grant probation."

The court in *Tenorio* indicated the sentencing power, i.e., the power to grant or deny probation, is an important part of the power of the judiciary in the following language: "When the decision to prosecute has been made, the process which leads to acquittal or to sentencing is fundamentally judicial in nature. . . . The judicial power is compromised when a judge, who believes that a charge should be dismissed in the interests of justice, wishes to exercise the power to dismiss but finds that before he may do so he must bargain with the prosecutor. The judicial power must be independent, and a judge should never be required to pay for its exercise.

"Finally, analogies to other forms of sentencing discretion, vested in individual judges and the Adult Authority, cannot excuse section 11718's invasion of the judicial power. *When an individual judge exercises sentencing discretion, he exercises a judicial power* which must be based upon an examination of the circumstances of the particular case before him, and which is subject to review for abuse." (Italics added.) (*People* v. *Tenorio, supra,* 3 Cal.3d 89, 94-95.)

*Tenorio* relied heavily on the dissent of Justice Schauer in *People* v. *Sidener,* 58 Cal.2d 645 [25 Cal.Rptr. 697, 375 P.2d 641]. In *Sidener,* Justice Schauer said: "Certainly the Legislature could absolutely prohibit the granting of probation or parole to anyone convicted of a narcotics (or any other) offense; or it could ordain any minimum and maximum terms it sees fit, or a mandatory life term without parole or even a nondiscretionary death penalty for such offenses. But the Legislature cannot—without transgressing our constitutional division of powers—transfer from the judicial to the executive branch of government the power either to grant or to deny, or to preclude judicial resolution of, a motion made prior to entry of judgment in a felony criminal action, the ruling on which will affect the substantial rights of the defendant under the judgment to follow." (*People* v. *Sidener, supra,* 58 Cal.2d pp. 645, 653, dissenting opinion of Justice Schauer.)

Even more specifically, Justice Schauer said: "It bears reiteration that the Legislature, of course, *by general laws* can control eligibility for probation, parole and the term of imprisonment, but it cannot abort the *judicial process* by subjecting a judge to the control of the district attorney." (Italics in original.) (*People* v. *Sidener, supra,* 58 Cal.2d pp. 645, 654, dissenting opinion of Justice Schauer.)

The Attorney General contends the *Tenorio* holding is based on the "inherent" judicial power to dismiss allegations of prior convictions, and the instant case is distinguishable because the power to grant probation, involved in Penal Code section 1203, is wholly statutory—not a part of inherent judicial power. He asserts the Legislature may give the court power

to grant probation, specify certain cases in which it may not be granted, then provide for exceptions to these exceptions, subject to the safeguard of the district attorney's concurrence. He reasons that since the Legislature need not provide for probation at all, it can constitutionally impose any conditions it wishes if it does choose to give the courts authority to grant probation. In support of this position, the Attorney General points out that the power to fix penalties for crime is exclusively a legislative function (*Keeler* v. *Superior Court,* 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617]), and the courts have no inherent power to grant probation. (*People* v. *Brown,* 172 Cal.App.2d 30, 34 [342 P.2d 410]; see also *Bennett* v. *Superior Court,* 131 Cal.App.2d 841, 845-846 [281 P.2d 285]; *People* v. *Hess,* 104 Cal.App.2d 642, 685-686 [234 P.2d 65].) The Attorney General's well thought out argument, expressed in a brief filed in the interim between the *Tenorio* and *Esteybar* decisions, is made untenable by *Esteybar.*[4]

In *Esteybar,* the Attorney General made the similar argument that the functions of the magistrate and the classification of offenses as felonies or misdemeanors are legislatively determined rather than drawn from the Constitution. The Supreme Court in response to this argument observed: "While it may be conceded that the Legislature in the first instance was not required to give the power to a magistrate to determine whether to hold a defendant to answer to a felony or a misdemeanor charge, having done so, the Legislature cannot condition its grant upon the approval of the district attorney." (*Esteybar* v. *Municipal Court, supra,* 5 Cal.3d 127.)

Likewise here, the Legislature was not required in the first instance to give the court power to grant probation, but having done so, it cannot condition the exercise of that power on the approval of the district attorney.

The court in *Tenorio* pointed out the discretion Health and Safety Code section 11718, purported to vest in prosecutors was unreviewable and could be exercised in a totally arbitrary fashion both in individual cases and by the adoption of county-wide policies (*People* v. *Tenorio, supra,* 3 Cal.3d 89, 95.) In *Esteybar,* the record revealed the existence of just such an arbitrary county-wide policy—one used as a bargaining tool to obtain guilty pleas. Although the deputy district attorney here admitted he was not "decently, knowledgeably prepared" to discuss the case, the record does not show an arbitrary and unreasonable opposition to the grant of probation. Nevertheless, the provision for the prosecutor's con-

---

[4]*People* v. *Harris,* 17 Cal.App.3d 388 [95 Cal.Rptr. 80], which was filed April 12, 1971, upheld the provisions of section 3051 of the Welfare and Institutions Code, which require the concurrence of the district attorney in certain commitments to the California Rehabilitation Center. This case also came down in the interim period between *Tenorio* and *Esteybar.* We feel that *Esteybar* renders untenable the position taken by the Court of Appeal in *Harris.*

currence in the granting of probation in the sixth unnumbered paragraph of Penal Code section 1203, is subject to the same possibility of abuse through imposition of arbitrary policies the Supreme Court found in Health and Safety Code section 11718, (*Tenorio*) and Penal Code section 17, subdivision (b)(5), (*Esteybar*). The Attorney General argues that the language specifying the case be "unusual" and one "in which the interests of justice would best be served" by probation provides a definite standard making county-wide policies impossible. But this language is very general and as a practical matter would not prevent a general policy of refusing to concur in granting probation; certainly it provides no meaningful standard for appellate review.

Thus, under the rationale of *Tenorio* and *Esteybar*, we hold that portion of the unnumbered sixth paragraph of section 1203 of the Penal Code which requires the concurrence of the district attorney before probation may be granted in certain cases is invalid as constituting a violation of the doctrine of separation of powers. (Cal. Const., art. III; art. VI, § 1.)

■ The Attorney General contends that, if the concurrence requirement of the sixth paragraph of section 1203 is unconstitutional as impinging on judicial power, the defendant would still not be eligible for probation since the concurrence requirement is not severable from the rest of that paragraph.

Since the enactment of Penal Code section 1203, in its present form in 1903, it has been amended 20 times, each amendment representing either an additional restriction on the power of the court to grant probation or a liberalization of a previous restriction. In 1957, the basic patterns of what are now the fourth and fifth paragraphs of the section emerged. The effect of the 1957 amendment was to remove robbery, burglary and arson from the list of crimes for which probation was absolutely prohibited. Probation was authorized in such cases only if the cases were unusual and the interest of justice demanded departure from the usual policy. There remained in what is now the unnumbered fifth paragraph an absolute prohibition on the granting of probation in certain cases—such as the one at bar.

Responding to criticism of this absolute ban on probation in the cases enumerated in unnumbered paragraph 5 and after extensive committee hearings, the Legislature enacted the present unnumbered paragraph 6. (See 32 State Bar J. p. 612; 50 Cal.L.Rev. 651; 22 Assembly Interim Com. Report No. 7, Parole and Probation (1963-1965) pp. 14, 15, reprinted in Appendix to Journal of the Assembly (1965 Reg.Sess.) vol. 2.)

■   Where it is manifest that the Legislature would never have passed a law without the unconstitutional provision, the remainder of the law must also fall. (*In re Perez,* 65 Cal.2d 224, 232 [53 Cal.Rptr. 414, 418, P.2d 6]; see *In re Bell,* 19 Cal.2d 488, 498 [122 P.2d 22].)   ■   While it is possible the Legislature would not have amended section 1203 in 1965 without the clause requiring the concurrence of the district attorney, it is by no means "manifest." Testimony of the witnesses before the Assembly committee considering the amendment, as excerpted in the committee reports cited above (at pp. 14-15), appears to indicate the major reason for the amendment was to "allow the judge to make an individual decision in each case." (Testimony of Mr. Thornton of the Chief Probation Officers Association of California.) No emphasis is placed on the concurrence provision in this report. Based on this legislative history, it is pure speculation whether or not the Legislature would have enacted the statute without the unconstitutional phrase.

■   Generally, unconstitutional provisions do not vitiate the whole act unless they enter so entirely into the scope and design of the law that it would be impossible to maintain it without such obnoxious provisions. (*Danskin* v. *San Diego Unified Sch. Dist.,* 28 Cal.2d 536, 555 [171 P.2d 885]; *People* v. *Lewis,* 13 Cal.2d 280, 284 [89 P.2d 388].)   ■   It is not impossible to maintain unnumbered paragraph 6 of Penal Code section 1203, without the unconstitutional provision: grammatically and conceptually, the invalid portion may be removed, leaving a readable, understandable statute. No wholesale rewriting of the statutory scheme is involved. Therefore, we hold that the concurrence clause is severable from the balance of unnumbered paragraph 6.

The judgment is reversed insofar as the sentence is concerned and the case is remanded to the Superior Court of San Bernardino County for that court to exercise its independent judicial discretion in deciding appellant's application for probation without reference to any mandatory concurrence by the district attorney.

We express no opinion as to the mechanics of, or the format for, the hearing in which the trial court is to exercise its discretion in deciding appellant's application for probation.

In this respect, we note the case of *In re Cortez,* 17 Cal.App.3d 264 [94 Cal.Rptr. 732], as modified, which held that a prisoner seeking to take advantage of the retroactivity of *Tenorio* must be returned to court for a full sentencing hearing, at which he would be entitled to counsel. The Supreme Court has granted a hearing in *Cortez;* it will be argued on that court's September calendar. It can be anticipated that in its *Cortez* opinion the Supreme Court will prescribe the proper procedure for resentencing de-

fendants in this and other *Tenorio*-type situations. Therefore, we will not speculate as to what that procedure should be.

Tamura, J., and Gabbert, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 6, 1971.